[Civ. No. 2679. Second Appellate District, Division One.—February 6, 1920.]

## SOUTHERN CALIFORNIA OIL SYNDICATE OF LONDON, ENGLAND (a Corporation), Respondent, v. LOMPOC PRODUCE AND REAL ESTATE COMPANY (a Corporation), Appellant.

[1] CONTRACTS—ADVANCES MADE TO TENANT—AGREEMENT AS TO REIMBURSEMENT FROM CROPS—RIGHTS IN PROCEEDS. — Where the agreement between the lessor and a third party, who had agreed to make certain advances to the lessee with which to pay the balance due on the rent for a previous year and to care for the crop then being grown, provided that such third party should have a first lien upon the crop being grown by the lessee for not to exceed a specified amount, that after the payment of said advances the proceeds should be applied upon the balance due the lessor as rent and the balance of the proceeds, if any, should be applied upon the indebtedness due from the lessee to such third party, in an action by the lessor against such third party to collect the excess over the amount it was agreed should constitute a first lien upon the crop, such third party having applied the entire proceeds on its own account, the court properly rejected evidence offered by the latter to prove that for the purpose of protecting the crop for the mutual benefit of itself and the lessor it was obliged to make further advances over and above the agreed amount.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. Kelley Hardenbrook and Wm. G. Griffith for Appellant.

Richards & Heaney and J. F. Frick for Respondent.

JAMES, J.—This appeal is taken by the defendant from a judgment entered by the trial court granting the relief to secure which the action was brought. In November, 1914, plaintiff was the owner of certain land which had theretofore been and was at the time held by one Tashiro as tenant. Tashiro was, at the time, indebted to the owner of

the land for rental which had accrued under the terms of the lease. The tenant had also had business relations with the defendant produce company, which latter had handled crops grown by him. Tashiro, being unable to make payment of the amount due to the plaintiff from his own resources, interested the defendant to the extent that, in consideration of the making of the contract hereinafter referred to, he was allowed to continue in the tenancy. The contract referred to was reduced to writing and signed by the plaintiff and the defendant, plaintiff being the first party and defendant the second party, and contained the following terms:

"Whereas, S. Tashiro is the tenant in possession of certain land belonging to the party of the first part, and whereas the party of the second part has this day advanced to said Tashiro the sum of $550.00 which has been paid to the party of the first part to apply on the rent for the year ending October 31, 1915; and whereas the said Tashiro is indebted to the party of the first part in the sum of $1650.00 on account of the balance of said rent due or to become due, and is also indebted to the party of the second part in certain sums, and has given to the party of the second part a mortgage of all crops to be grown on the above mentioned premises during the ensuing year as security for said last mentioned indebtedness and advances.

"Now, Therefore, it is hereby agreed that the party of the second part shall have a first lien upon said crop under its mortgage for the sum of $550 this day advanced to be applied on the rent, and also for all further sums which the said party of the second part shall advance to said Tashiro after this date, said further advances not to exceed in all the sum of Seven Hundred ($700.00) Dollars.

"It is further agreed that after taking out of the proceeds of said crop the amount of said $550 and said advances, the said proceeds shall be applied upon the balance due the party of the first part as rental, and the party of the first part expressly agrees that said tenant shall not be held in default for non-payment of rent until said crop shall have been harvested. After said rent shall have been paid, the balance of the proceeds of said crop shall be applied in payment of any indebtedness due from said Tashiro to the party of the second part.'"

The crops grown during the year 1915 were harvested and received by the defendant and there was credited upon the books of the defendant the sum of $2,823.29 as the price thereof. Meanwhile the full amount of $550 and seven hundred dollars, covered by the agreement as advances to be made to the tenant by defendant, had been so advanced to Tashiro. The defendant, however, refused to account to the plaintiff for any part of the crop price, claiming that further advances and expenditures had been made in order to protect the crops of Tashiro, which advances and expenditures more than equaled the difference between the $550 plus the seven hundred dollars and the amount credited as the price of the crop. Defendant, in its answer, made the following allegations: "That on said nineteenth day of May, 1915, said premises had been planted to beans, which were growing thereon, and in order to properly tend and care for said crop of beans, it then became and was necessary to expend considerable sums of money for labor, machinery and supplies; that on said last mentioned date said Tashiro was without funds or credit to enable him to properly tend and care for said crop, and said Tashiro did then and there refuse and fail to tend, take care of, and protect said crop well, or carefully, or at all, and said crop, by reason thereof, was in danger of becoming damaged and destroyed, so that neither plaintiff nor defendant might obtain any money or benefit from the proceeds thereof. That therafter defendant gave notice to plaintiff that the sum of seven hundred dollars advanced to said Tashiro as aforesaid had been expended, and that in order to tend, care for, and harvest said crop it would be necessary to expend further sums therefor, which the said Tashiro was unable to provide, and defendant demanded of plaintiff that plaintiff advance such necessary sums or permit defendant to do so, and first deduct the same from the money received from the sale of said crop; but that plaintiff failed and refused to advance any sums whatever to be used in the protection, caring for and harvesting of said crop. That on the thirty-first day of July, 1915, the defendant, pursuant to the terms of said crop mortgage, and for the purpose of protecting the interests of defendant and plaintiff in said crops, entered upon the said premises and took possession thereof and of the crops growing thereon; and thereafter defendant took all necessary meas-

ures for the protection of said crops, harvested, threshed, and sacked the same, and delivered them into a warehouse." At the trial the treasurer of defendant company testified that after the crops were harvested, a credit of $2,823.29 was given to Tashiro on the books of the defendant, and in this connection he further testified: "Q. Was that a credit, Mr. Kahn, or was it a sale of the crop of Mr. Tashiro? A. It was a credit. The beans were in our possession at all times. A credit was made upon a sale to us. We bought that produce from Tashiro at that price." [1] On behalf of the defendant the same witness was asked as to whether his company had paid out additional money in raising, cultivating, and harvesting the crops during the summer of 1915, and as to what the condition of the crops was in May, 1915, and as to what measures were taken by the defendant to protect the crops, if any; and whether it became necessary for the defendant to expend money for the protection of the crops during the summer of 1915; and whether the defendant entered into the possession of the premises and took possession of the crops during that summer. All of these questions were objected to and the objections sustained. The main contention presented by this appeal involves the rulings of the court in sustaining objections to these questions. The evident theory of the defendant was that, notwithstanding the express and particular terms of the contract entered into between defendant and the plaintiff limiting the advances to be made to the two sums of $550 and seven hundred dollars, it was entitled to show other advances made for the purpose of protecting the crops for the mutual benefit of plaintiff and defendant. We think the court did not err in its rulings. The contract was quite plainly made with the intention of assuring the plaintiff that it would receive payment of the rental due it from Tashiro, provided the crop brought a sum of money in the market over and above the amounts specifically fixed as the maximum which the defendant was entitled to charge against the sale price. By the allegations of the answer it appears that the advances fixed by the contract were not sufficient, for the defendant states therein that "said Tashiro was without funds or credit to enable him to properly tend and care for said crop." Without a further agreement—and it appears there was none—covering that matter,

we do not think that the defendant was entitled to expend further sums, even for the protection of the crops, and charge that expenditure against the sale price obtained, and so deprive the plaintiff of any right to participate in the proceeds. We must assume that it was to defendant's interest to secure a continuation of the tenancy of Tashiro, and it was by reason of the consideration expressed in the written contract that the plaintiff allowed the lessee to continue to crop the ground. The trial judge allowed offsets against the sale price of the crop for the seven hundred dollars and $550 advanced by the defendant, and gave judgment in favor of the plaintiff for the rental due to it. In our opinion, the judgment was right.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.